Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/25/2020 12:11 AM CST

State of Nebraska, appellee, v.
Neland T. Gray, Jr., appellant.
___ N.W.2d ___

Filed October 2, 2020.    No. S-19-1173.

1. **Sentences: Appeal and Error.** A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.

3. **Appeal and Error.** For an alleged error to be considered by an appellate court, an appellant must both assign and specifically argue the alleged error in the party's initial brief.

4. ____. Where an appellant's brief contains conclusory assertions unsupported by an analytical argument, the appellant fails to satisfy this requirement.

5. **Sentences: Appeal and Error.** When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles.

6. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.

7. ____. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Lancaster County: Jodi L. Nelson, Judge. Affirmed.

Nancy K. Peterson for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## NATURE OF CASE

In an appeal from a second degree murder conviction, the appellant challenges the district court's imposition of a life sentence to run consecutively with a sentence of 25 to 35 years' imprisonment for use of a deadly weapon to commit a felony. According to the appellant, the district court abused its discretion by imposing an excessive sentence.

## BACKGROUND

Pursuant to a plea agreement, Neland T. Gray, Jr., was convicted of second degree murder, in violation of Neb. Rev. Stat. § 28-304 (Reissue 2016), a Class IB felony, and use of a deadly weapon to commit a felony, in violation of Neb. Rev. Stat. § 28-1205(1)(a) and (b) (Reissue 2016), a Class II felony. The district court imposed on Gray a life sentence for the second degree murder conviction and a consecutive sentence of 25 to 35 years' imprisonment for the use of a deadly weapon to commit a felony conviction.

The convictions and sentences at issue arise out of events that occurred on December 31, 2018. Gray killed his ex-girlfriend, Dijah Ybarra, who was the mother of their two young children, by stabbing her at least 15 times. That evening, Ybarra took the children to Gray's mother's home, where Gray was living. Gray previously agreed to watch the children while Ybarra went out to celebrate New Year's Eve. But when Ybarra arrived, Gray informed her that he had decided to go

out as well and had arranged for his aunt to watch the children instead. Gray rode with Ybarra to his aunt's house where they dropped the children off. Ybarra then took Gray to another location where she had agreed to drop him off.

After arriving, Ybarra discussed with Gray that she was moving on and had been dating another man. This discussion upset Gray. Gray pulled out a kitchen knife that he had taken from his mother's house and began stabbing Ybarra. Gray initially prevented Ybarra from exiting the car by grabbing her hair, but she was eventually able to get out and attempted to run away. Gray pursued Ybarra, continuing to stab her. Gray then left Ybarra bleeding and dying on the curb while he took her car and fled the scene. Gray called his mother and told her he was going to jail.

According to the information in the presentence investigation report, Gray had been physically and emotionally abusive to Ybarra throughout their relationship and had been in jail the previous year for assaulting her. During that prior altercation, Gray also assaulted another woman who had attempted to intervene on Ybarra's behalf. Gray then threatened the intervening woman's fiance with a knife when the fiance verbally confronted Gray.

While in jail after this incident and despite a protection order, Gray continued to contact Ybarra numerous times, threatening and verbally abusing her. Gray also assaulted other inmates while incarcerated.

Gray was released from jail in early December 2018. Gray and Ybarra resumed their sexual relationship upon his release. Gray had wanted to reestablish a relationship. However, Ybarra was apparently involved with both Gray and another man during this time, which Gray reported caused him severe feelings of jealousy. According to interviews with Gray's family and friends contained within the presentence investigation report, a couple of days before the murder, Ybarra and her new boyfriend had taunted Gray about their new relationship. The family and friends asserted that Ybarra's boyfriend sent Gray

pictures of himself with Gray's children and Ybarra, claiming he was replacing Gray in Ybarra's and his children's lives.

At sentencing, Gray's counsel requested that Gray's sentence allow for a release date early enough to allow Gray to still become a productive member of society. Defense counsel also argued that Gray's sentence should take into account Gray's age of 22 years, remorse, history of psychological issues, substance abuse, and childhood exposure to domestic violence. The presentence investigation report sets forth that Gray was raised in an abusive household, struggled with his temper from a young age, consistently experienced domestic violence at home, and failed to learn any coping skills.

Gray had been suspended multiple times from school for fighting, eventually being expelled. Gray ultimately obtained his diploma through the GED program and held multiple jobs, but never for longer than 7 months at a time.

Gray has engaged in heavy alcohol and marijuana use since age 14, smoking marijuana six to eight times per day up until his incarceration in 2017. He also reported consuming a pint of hard liquor per day. Gray admitted that he was using alcohol heavily in the time following his release in December 2018 and that he had been drinking throughout the afternoon on the day of the murder.

Gray has a significant criminal history, both as a juvenile and as an adult. Gray abused Ybarra physically, verbally, and emotionally throughout their tumultuous relationship. Multiple family members and friends had told Gray to move on and leave Ybarra alone.

At the sentencing hearing, the district court stated that it had "carefully and thoughtfully considered [Gray's early release] request, particularly in light of [Gray's] age," but reasoned that it was not appropriate in light of Gray's history of violent criminal conduct, character, and flagrant violations of court orders. The district court observed that Gray had been "abusive, controlling, demeaning, possessive, and selfish" and had "shown a complete unwillingness to follow orders of the Court."

The court pointed out that Gray had contacted Ybarra multiple times while incarcerated in "flagrant violation[]" of the protection order in place. The court further recognized that Gray's postrelease supervision order prohibited Gray from having any contact with Ybarra; using, possessing, or consuming alcoholic beverages or controlled substances; possessing any weapons; and engaging in unlawful acts or acts injurious to others, and yet, Gray "demonstrated no regard whatsoever for that order."

The district court concluded that it was "impossible . . . to find that [Gray] at some time in the future will be amenable to the same type of supervision he was on at the time of this brutal murder" and that he is "a violent and dangerous man who has demonstrated an inability through incarceration or otherwise to co-exist with others without violence."

## ASSIGNMENT OF ERROR

Gray assigns that the district court abused its discretion in imposing an excessive sentence.

## STANDARD OF REVIEW

[1,2] A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court.[1] A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.[2]

## ANALYSIS

[3-5] Gray alleges the life sentence for his second degree murder conviction was excessive. He does not specifically challenge the weapons conviction of 25 to 35 years' imprisonment. For an alleged error to be considered by an appellate court, an appellant must both assign and specifically argue the

---

[1] *State v. Smith*, 240 Neb. 97, 480 N.W.2d 705 (1992).

[2] *State v. Weaver*, 267 Neb. 826, 677 N.W.2d 502 (2004).

alleged error in the party's initial brief.[3] Where an appellant's brief contains conclusory assertions unsupported by an analytical argument, the appellant fails to satisfy this requirement.[4] Gray's conviction for second degree murder was punishable by a minimum of 20 years' imprisonment and a maximum of life imprisonment.[5] When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles.[6]

[6,7] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.[7] The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[8]

Gray was 21 years old at the time of the murder and 22 years old when he was sentenced. He argues that, in light of his age, a minimum sentence of life that would never allow for his parole eligibility is excessive. Gray relies on cases like *State v. Iromuanya*,[9] where we have reduced life sentences

---

[3] See *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016).

[4] See *id.*

[5] See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2018).

[6] See *State v. Lassek*, 272 Neb. 523, 723 N.W.2d 320 (2006).

[7] *Id.* See *State v. Thieszen*, 300 Neb. 112, 912 N.W.2d 696 (2018).

[8] See *State v. Lassek, supra* note 6. See, also, *State v. Thieszen, supra* note 7.

[9] *State v. Iromuanya*, 272 Neb. 178, 719 N.W.2d 263 (2006).

based on the characteristics and history of the defendant. The defendant in *Iromuanya* was 23 years old when he committed second degree murder and had no significant criminal history. The defendant had fired a single shot, while at a party, which wounded one victim and killed another. We noted that by setting a minimum of life imprisonment, the court could not have imposed a more severe minimum term for second degree murder on a hardened criminal with a lengthy history of violent felony convictions.[10] We reiterated that a sentence should fit the offender and not merely the crime.[11]

Both Gray's criminal history and the nature of his killing of Ybarra differ significantly from *Iromuanya*. Although Gray pleaded to a lesser charge, premeditation is indicated by the fact that Gray took a kitchen knife from his mother's house, had it on his person when he entered Ybarra's car, and manipulated the situation so that Ybarra would end up alone with him, where he used the knife to stab Ybarra over 15 times while in the car and as she attempted to flee.

Gray has a long criminal history, including multiple convictions of violent conduct with others and with Ybarra specifically, including Gray's being incarcerated for a year for assaulting Ybarra—his release being only weeks before this killing occurred. During that prior assault incident, Gray also assaulted another woman who attempted to intervene on Ybarra's behalf and threatened the intervening woman's fiance with a knife when he verbally confronted Gray.

As the district court noted, Gray has shown no interest or effort to abide by court orders. Despite a protection order in place while Gray was incarcerated, Gray still contacted Ybarra numerous times, threatening and verbally abusing her. Gray repeatedly violated the prohibitions of his postrelease supervision by possessing the kitchen knife from his mother's

---

[10] *Id.*

[11] *Id.*

house, consuming alcohol, and having multiple contacts with Ybarra that evening that led to her death.

The district court recognized the appropriate factors when imposing Gray's life sentence despite his relatively young age. Further, the sentence properly reflected the seriousness of the crimes committed and Gray's past criminal conduct. As the district court observed, Gray is a "violent and dangerous man who has demonstrated an inability through incarceration or otherwise to co-exist with others without violence."

A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.[12] We find the district court did not abuse its discretion in imposing a life sentence in this matter.

## CONCLUSION

The district court carefully considered all the relevant facts when it imposed the life sentence. Considering the totality of the circumstances, we cannot say that the sentence imposed by the district court was untenable. Gray's assignment of error regarding the imposition of an excessive sentence is without merit. For the foregoing reasons, we affirm.

Affirmed.

---

[12] *State v. Weaver, supra* note 2.