IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. COOPER


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

CAVIN D. COOPER II, APPELLANT.


Filed May 25, 2021.    No. A-20-315.


Appeal from the District Court for Douglas County: THOMAS A. OTEPKA, Judge. Affirmed.

Renee L. Mathias, of Schaefer Shapiro, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.


RIEDMANN, BISHOP, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Following a jury trial, Cavin D. Cooper II was found guilty of count 1, possession of a deadly weapon by a prohibited person; count 2, first degree assault; and count 3, use of a deadly weapon to commit a felony. After finding Cooper to be a habitual criminal with regard to counts 2 and 3, the Douglas County District Court sentenced him to 60 to 70 years' imprisonment on the possession count, 40 to 50 years' imprisonment on the assault count, and 45 to 50 years' imprisonment on the use of a deadly weapon count, with the sentences ordered to be served consecutively. Cooper now appeals his convictions and sentences. Following our review of the record, we affirm.

## II. STATEMENT OF FACTS

On July 31, 2018, Dominick Hill was shot multiple times near an Omaha convenience store. When law enforcement arrived on the scene, they tended to Hill's injuries, which involved

bullet wounds in his upper back and upper leg, and attempted to gather information from Hill, who was uncooperative. Hill's injuries were described by a paramedic who responded to the scene as "life-threatening." Law enforcement collected forensics evidence from the scene including nine Luger 9mm shell casings and surveillance video from the convenience store.

The surveillance video depicted the shooter running toward Hill while shooting him as Hill attempted to flee. At the time of the shooting, the shooter was wearing a white shirt, black shorts, and white tennis shoes with black accents. From the video, law enforcement produced a still image of the shooter which was distributed to law enforcement agencies. Because law enforcement believed the still image fit the physical description of Cooper, he was identified as a person of interest in the matter.

Within 2 days of the shooting, law enforcement located Cooper during a traffic stop. In addition to Cooper, there were two other passengers in the vehicle: Jaleesa Harris, the front seat passenger, and Christopher Stewart, the rear seat passenger. When law enforcement approached the vehicle, Cooper exited the driver's seat while Harris and Stewart remained in the vehicle. As an officer attempted to handcuff Cooper, Cooper attempted to flee; however, he was quickly apprehended and handcuffed. Later, a 9mm handgun loaded with PMC Luger bullets was discovered on Cooper's seat in the vehicle. Officers also noticed the shoes Cooper was wearing at the time of his arrest appeared to be the shoes worn by the individual who shot Hill 2 days prior as depicted in the video.

An information was filed in September 2018, which was later amended for a second time in January 2020, wherein the State charged Cooper with count 1, possession of a firearm by a prohibited person, a Class IB felony; count 2, first degree assault, a Class II felony; and count 3, use of a firearm to commit a felony, a Class IC felony. The information also alleged that Cooper was a habitual criminal in violation of Neb. Rev. Stat. § 29-2221 (Reissue 2016).

1. PRELIMINARY HEARING

In October 2019, Cooper filed a motion requesting the appointment of new counsel to represent him because the public defender's office had previously represented Hill and Stewart which Cooper alleged created a conflict of interest. During a hearing on Cooper's motion, Cooper's defense counsel clarified that the public defender's office had represented Hill when Hill was charged with shooting Stewart in connection with a 2015 incident. Counsel explained that representation ended when Hill's case was dismissed. Defense counsel further explained that law enforcement believed the present shooting of Hill was in retaliation for Hill shooting Stewart in 2015 and reiterated that Stewart was with Cooper when Cooper was arrested and the firearm involved in the present shooting was discovered. Following defense counsel's representations to the court, Cooper explained that "Hill is now a State's witness and I feel like [it's] a conflict of interest because he was already represented by the Public Defender's Office." Also during the hearing, Cooper argued that trust was lacking between himself and his attorney because Cooper wanted to go to trial but his attorney counseled Cooper to enter a plea.

After first overruling Cooper's motion on the basis that no conflict of interest existed, the district court then inquired as to Cooper's dissatisfaction with his attorney. Cooper responded that his counsel did not communicate with him, that Cooper could not engage in his own discovery,

and that his counsel was not properly representing Cooper. The court informed Cooper that as an indigent defendant, he must show good cause for removal of his attorney, which he failed to do. The court instructed Cooper that he could choose to either represent himself or to work with the attorney he had; Cooper chose the latter.

## 2. TRIAL

Trial was held in January 2020. The evidence included testimony from multiple witnesses, including Detective Chad Frodyma, Jaleesa Harris, and Angela Harder, along with photographic exhibits and the surveillance video of the shooting.

### (a) Detective Chad Frodyma

Frodyma testified that after Cooper was identified as a suspect in the present shooting, Frodyma compared photos of Cooper with the still image of the shooter produced by law enforcement from the surveillance video. After doing so, Frodyma determined Cooper very closely resembled the shooter.

Frodyma testified that on August 2, 2018, he conducted a stop of the vehicle Cooper was driving because Cooper was driving with a suspended driver's license. Frodyma testified that in an effort to make small talk and lessen the tension of the stop, he commented to Cooper, "Hey, when did you get out?" at which point Cooper's counsel asked to approach and a sidebar discussion ensued. Cooper's counsel explained that Frodyma's comment referring to Cooper being incarcerated was unanticipated, clearly prejudicial, and warranted a mistrial. The State responded that it did not intend to elicit Frodyma's answer and had instructed him not to refer to Cooper's prior incarceration. The State also argued that the statement caused Cooper "limited" prejudice because Cooper was charged with being a prohibited person in possession of a firearm and the State anticipated there would be a stipulation regarding Cooper's status as a convicted felon. Ultimately, the district court denied the motion for mistrial and gave a limiting instruction to the jury to "disregard the last part of [Frodyma]'s answer . . . about when did you get out."

### (b) Jaleesa Harris

During trial, Harris explained that on the date of the traffic stop, she had given Cooper permission to drive her vehicle and that she, Cooper, and Stewart were hanging out together and smoking marijuana. At some point, law enforcement pulled over their vehicle and the officer approached the front passenger side of her vehicle where she was seated.

Harris explained that after law enforcement pulled them over and the front driver's door was open, she saw a firearm sitting in a hat on the driver's seat. Photographs received into evidence showed a tan fishing hat with a firearm placed inside the hat. The hat and firearm were located on the driver's seat next to the driver's buckle and the center console. A SnapChat photograph from Harris' phone received approximately a month prior to the traffic stop showed Cooper wearing a tan fishing hat. Harris testified that she did not own that type of hat.

When asked to recall what she observed after Cooper exited the vehicle, Harris explained that her attention was directed towards the driver's side of the vehicle, that she kept her hands in the air, and that she never saw Stewart's hands by the driver's seat. Harris stated she did not own a firearm, had not observed a firearm in her vehicle prior to the traffic stop, and did not see Cooper

or Stewart with a firearm that day. On cross-examination, however, Harris testified she was not focusing on Stewart's actions in the rear seat.

### (c) Angela Harder

Harder, a senior forensic technician and firearm and tool mark examiner employed by the Omaha Police Department (OPD), testified about her examination of the firearm found in the vehicle and the casings and projectiles discovered at the scene of Hill's shooting. Harder testified that she performed a microscopic comparison to identify characteristics consistent between recovered casings from the scene and test fired casings. Harder explained that after performing her examination of the firearm located in the vehicle and the casings, she concluded the casings were fired by the firearm found during the traffic stop of the vehicle Cooper was driving.

### 3. VERDICT AND SENTENCING

At the conclusion of the trial, the jury found Cooper guilty of possession of a deadly weapon by a prohibited person, first degree assault, and use of a deadly weapon firearm to commit a felony. The court accepted the jury's verdict and later found Cooper was a habitual criminal. At sentencing, Cooper's attorney informed the court that Cooper was 32 years old, and because of the finding that Cooper was a habitual criminal, the mandatory minimum sentence on counts 2 and 3 was 10 years' imprisonment on each count. The district court sentenced Cooper to 60 to 70 years' imprisonment on count 1, possession of a firearm by a prohibited person; 40 to 50 years' imprisonment on count 2, first degree assault; and 45 to 50 years' imprisonment on count 3, use of a firearm to commit a felony. The court ordered the sentences to be served consecutively and granted Cooper credit for 605 days served. Cooper has timely appealed to this court.

### III. ASSIGNMENTS OF ERROR

Cooper assigns, restated, that (1) the district court erred in sustaining the State's motion in limine and excluding evidence that he contends shows Hill's shooting was perpetrated by Stewart in retaliation for being shot by Hill in 2015; (2) the district court erred in failing to grant a mistrial following Detective Frodyma's direct examination testimony that he asked Cooper "Hey when did you get out" notwithstanding the court's limiting instruction; (3) the evidence was insufficient to support his convictions because the State failed to introduce sufficient evidence for a rational trier of fact to find that Cooper shot Hill and Cooper possessed the firearm found in the vehicle; and (4) the sentences imposed were excessive.

Cooper further contends his trial counsel was ineffective in failing to present testimony from Hill, the victim in this case, who would have testified that Cooper was not the individual who shot him; present testimony from Stewart, who would have testified that Hill was not in possession of the firearm; present testimony from Detectives James and Cunningham, who would have testified that Hill had previously been arrested for shooting Stewart; request the court continue the trial upon learning that Detectives James and Cunningham were unavailable to testify; consult with, or call as a witness, an independent forensic ballistics expert because the expert would have refuted the State's ballistics expert's testimony; ask any questions during trial of the State's expert, Harder; and ask the court for leave to withdraw due to a conflict.

Cooper also assigns that the court erred in not granting his own "motion to dismiss his public defender due to a conflict in the representation." Brief for appellant at 2. However, Cooper does not argue this error in his brief. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the initial brief of the party asserting the error. *State v. Gray*, 307 Neb. 418, 949 N.W.2d 320 (2020). Therefore, we do not consider this assignment of error.

## IV. STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020). A trial court's determination of the relevancy and admissibility of evidence must be upheld in the absence of an abuse of discretion. *Id*. Balancing the probative value of evidence against the danger of unfair prejudice is within the discretion of the trial court. *Id*.

The decision whether to grant a motion for mistrial is within the trial court's discretion and will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Aguilar*, 268 Neb. 411, 683 N.W.2d 349 (2004).

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020).

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Gray, supra*. A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id*.

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Clausen*, 307 Neb. 968, 951 N.W.2d 764 (2020). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

### 1. PREVENTING WITNESSES FROM TESTIFYING

Cooper argues the court abused its discretion in sustaining the State's motion in limine on relevancy and hearsay grounds thereby excluding evidence critical to his defense that he contends establishes Hill's shooting was perpetrated by Stewart in retaliation for being shot by Hill in 2015.

In the present case, the State made an oral motion in limine during trial to exclude evidence concerning a 2015 shooting that resulted in Hill's arrest. In response, Cooper argued and offered to prove that in 2015, Stewart was shot; that Stewart originally identified Hill as the person who shot him; and that Stewart initially provided police with a Facebook page that contained a photograph of Hill wearing the same clothes "as what was identified as the shooter of . . . Stewart." Although Stewart identified Hill in a photo lineup as his shooter, he later recanted that allegation and charges against Hill were eventually dropped.

In order to present that evidence to the jury, Cooper explained he originally intended to have the two detectives who investigated the 2015 shooting testify. However, because the detectives were unavailable at the time of trial, Cooper proposed to offer a certified copy of the criminal complaint regarding the 2015 shooting. Cooper further argued to the court that the State's witnesses previously stated at a preliminary hearing that the 2015 shooting was a motive for the shooting in the present action. The court ultimately sustained the State's motion in limine on relevance and hearsay grounds.

At the close of the trial, Cooper offered into evidence a certified copy of a 2015 Douglas County Court criminal complaint which the court received as part of Cooper's offer of proof. However, the court stated that its ruling on the State's motion in limine remained the same. Cooper now argues that the court erred in its evidentiary ruling.

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Rev. Stat. § 27-401 (Reissue 2016). Despite its relevance, evidence may be excluded if its probative value is lacking. *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020). "Relevancy requires only that the probative value be something more than nothing." *Id*. at 447, 945 N.W.2d at 484. Therefore, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Neb. Rev. Stat. § 27-403 (Reissue 2016).

In order to examine Cooper's claim, we analyze it in the context of the evidence presented at trial. Following the shooting, law enforcement was able to produce a still photo of the shooter obtained from video footage of the incident. From that photo, law enforcement eventually identified Cooper as a suspect and he was later found driving a vehicle in which a firearm was located next to him wrapped in a hat that appeared to have been worn by Cooper in a separate photo. OPD's senior forensic technician opined that the firearm located in the vehicle Cooper was driving was the firearm used by the shooter. Against that background, Cooper desired to introduce evidence that Stewart, a passenger in the vehicle Cooper was driving when he was pulled over by law enforcement, previously accused Hill, the victim in this case, of shooting Stewart in 2015, and that Hill was originally charged in connection with the incident. Cooper argued the 2015 shooting incident was relevant because it would establish that Stewart, not Cooper, had motive to retaliate for the 2015 shooting. But as Cooper's counsel acknowledged during the motion in limine hearing, Stewart later recanted his allegation that Hill shot him and the charges against Hill were later dropped by the State. Because of the lack of clarity associated with the 2015 incident and the method upon which Cooper's counsel desired to admit it, the court sustained the State's motion in

limine on relevancy and hearsay grounds and the information governing the 2015 incident was not admitted into evidence.

The question becomes whether the court erred in excluding the 2015 complaint at trial. Although the prior alleged incident involving Stewart and Hill may have provided some evidence which was probative of Cooper's theory that Stewart had motive to retaliate against Hill, it was the method of presentation by which Cooper intended to assert it which resulted in the court's ruling here. At trial, Cooper stated he intended to offer evidence of the prior 2015 incident by offering the 2015 criminal complaint filed by the State against Hill as a result of that incident. However, the 2015 complaint only contains an allegation that on or about July 4, 2015, Hill did knowingly cause injury to Stewart. It does not contain a separate evidentiary allegation as to why the State filed the complaint. This complaint was later dismissed by the State. As we previously noted, "[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." § 27-401. "The fact that the state brings . . . charges is not evidence of anything. The charges are simply an accusation, nothing more." NJI2d Crim. 1.2. See, *State v. Henry*, 292 Neb. 834, 875 N.W.2d 374 (2016); *State v. Morgan*, 286 Neb. 556, 837 N.W.2d 543 (2013); *State v. Huerta*, 26 Neb. App. 170, 917 N.W.2d 175 (2018). Because the fact that the State brought a complaint against Hill "is not evidence of anything," the filing of the complaint is not relevant evidence. We find the court did not abuse its discretion in sustaining the State's objection to the 2015 criminal complaint on relevancy grounds. This assigned error fails.

## 2. MISTRIAL

Next, Cooper argues the court should have granted his motion for mistrial following Frodyma's testimony that he first asked Cooper upon pulling him over, "Hey, when did you get out?" Cooper's sole argument governing the prejudice to him resulting from this statement was that "[t]here was significant evidence presented in Court that . . . Stewart at a minimum was in possession of the firearm. There was not overwhelmingly [sic] evidence of . . . Cooper's guilt." Brief for appellant at 17.

As we previously stated, following Detective Frodyma's testimony governing the question he posed to Cooper upon greeting him, the district court admonished the jury to disregard the testimony. As such, the question becomes whether this admonishment was sufficient, or whether, under these circumstances, the court abused its discretion in not granting a mistrial.

In *State v. Archbold*, 217 Neb. 345, 355, 350 N.W.2d 500, 506-07 (1984), the Nebraska Supreme Court held:

> A mistrial may be warranted where unfairness has been injected into a jury trial and so permeates the proceedings that no amount of admonition to the jury can remove the unfairness to a party. . . . Therefore, a mistrial may be the only recourse on those occasions when admonition to the jury cannot eradicate the unfair prejudice to a party, or, as expressed in *Dunn v. United States*, 307 F.2d 883, 886 (5th Cir. 1962), "Otherwise stated, one 'cannot unring a bell'; 'after the thrust of the saber it is difficult to say forget the wound'; and finally, 'if you throw a skunk into the jury box, you can't instruct the jury not to smell it'."

And in *State v. Dittrich*, 191 Neb. 475, 478, 215 N.W.2d 637, 639 (1974), the Nebraska Supreme Court quoted *State v. Johnson*, 60 Wash. 2d 21, 371 P.2d 611 (1962), stating, "'The test is this: Did the inadvertent remark, which the jury was instructed to disregard, when viewed against the backdrop of all the evidence, so taint the entire proceedings that the accused did not have a fair trial?'"

In applying that test to the case at bar, we do not find the district court abused its discretion in admonishing the jury to disregard the remark and in overruling the motion for mistrial on this record. Here, in connection with the shooting of Hill, Cooper was charged with possession of a firearm by a prohibited person, first degree assault, and use of a firearm to commit a felony. In connection with the first charge, the State was required to prove that Cooper was in possession of a firearm and that at the time of the possession, Cooper was a prohibited person. See *State v. Vann*, 306 Neb. 91, 944 N.W.2d 503 (2020). In connection with the second such element, on the fourth day of trial, in the presence of the jury, the following colloquy occurred between the court and counsel:

> [Prosecutor]: . . . The State would offer a stipulation of the parties I've marked as Exhibit 97. And with permission of the Court, I'd like to read it into the record.
> THE COURT: Yes.
> [Prosecutor]: In the District Court of Douglas County, Nebraska, *State of Nebraska*, plaintiff, *vs. Cavin D. Cooper*, defendant. Case No. CR18-3162.
> Stipulation of the parties: Come now the undersigned parties hereby stipulate to the following facts for purposes of the trial in the above-captioned matter.
> On or about July 31st, 2018, through August 2nd of 2018, the defendant, Cavin D. Cooper, was a prohibited person as defined by Nebraska Revised Statute [§] 28-1206 due to the fact that he had previously . . . been convicted of a felony. Dated this 30th day of January, 2020. Prepared and submitted by Sean Lavery, Deputy County Attorney. Approved as to form and content by Matthew Miller, attorney for defendant, Cavin Cooper.

Exhibit 97 was received into evidence by the court.

Accordingly, during the course of this trial, the jury was presented with a stipulation that Cooper had previously been convicted of a felony. As such, the jury was rightfully aware of this information as it related to the first charge made against Cooper. Under these circumstances, Cooper cannot claim to have been prejudiced by Frodyma's inadvertent testimony as to his comment to Cooper "Hey, when did you get out?" It was sufficient for the court to admonish the jury to disregard the remark and the court did not abuse its discretion in overruling Cooper's motion for mistrial as it relates to the aforementioned statement during Frodyma's testimony. This assignment fails.

### 3. SUFFICIENCY OF EVIDENCE

Cooper was convicted of being in possession of a firearm by a prohibited person, use of a deadly weapon to commit a felony, and first degree assault. He argues there was insufficient evidence to convict him of these charges because the State failed to prove he was in possession of a firearm or that he shot Hill.

At the time of the alleged commission of the instant offense, Neb. Rev. Stat. § 28-1206 (Supp. 2018) provided, in pertinent part:

(1) A person commits the offense of possession of a deadly weapon by a prohibited person if he or she:

(a) Possesses a firearm, a knife, or brass or iron knuckles and he or she:

(i) Has previously been convicted of a felony;

(ii) Is a fugitive from justice; or

(iii) Is the subject of a current and validly issued domestic violence protection order, harassment protection order, or sexual assault protection order and is knowingly violating such order; or

(b) Possesses a firearm or brass or iron knuckles and he or she has been convicted within the past seven years of a misdemeanor crime of domestic violence.

. . . .

[(3)](b) Possession of a deadly weapon which is a firearm by a prohibited person is a Class ID felony for a first offense and a Class IB felony for a second or subsequent offense.

Neb. Rev. Stat. § 28-308(1) (Reissue 2016) provides: "A person commits the offense of assault in the first degree if he or she intentionally or knowingly causes serious bodily injury to another person."

Neb Rev. Stat. § 28-1205(1)(a) (Reissue 2016) provides: "Any person who uses a firearm, a knife, brass or iron knuckles, or any other deadly weapon to commit any felony which may be prosecuted in a court of this state commits the offense of use of a deadly weapon to commit a felony."

Cooper argues there was insufficient evidence to convict him of these charges because, as to the possession charge, the State failed to prove he possessed the firearm found on the driver's seat of the vehicle he was operating at the time of the traffic stop. As to the first degree assault and use of a firearm to commit a felony charge, he argues that the State failed to prove that he was the shooter.

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019). When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Williams*, 306 Neb. 261, 945 N.W.2d 124 (2020).

In reviewing this record in the light most favorable to the prosecution, we find that a rational trier of fact could have found the challenged elements here, that is, that Cooper was in possession of a firearm when he was pulled over by Detective Frodyma and that Cooper used the firearm to shoot Hill on July 31, 2018. Although we have previously summarized the evidence

- 9 -

proffered by the State in connection with these charges, we do so here again as it relates to this specific assignment of error. In connection with the shooting, law enforcement was able to obtain video surveillance of the actual shooting and produce a still photo of the shooter. From that photo, law enforcement was able to identify Cooper as a suspect, and after Cooper was found operating a vehicle on a suspended license, law enforcement conducted a traffic stop of the vehicle Cooper was driving. Although Cooper attempted to run from law enforcement, they apprehended him and discovered a firearm on the driver's seat of the car that he was operating at the time of the traffic stop. The firearm was wrapped in a hat that Cooper was seen wearing in a different photo taken one month prior to Cooper's arrest. The State's ballistics expert identified the firearm located in the vehicle as the same firearm used to shoot Hill, and the shoes Cooper was wearing at the time of the stop appeared to be the same shoes the shooter was wearing in the video of the shooting.

The evidence, when taken together with the remainder of the record, and viewed in the light most favorable to the State, was sufficient to establish that Cooper was in possession of the firearm located in the vehicle he was driving at the time of the traffic stop; and that Cooper had used that firearm to shoot Hill on July 31, 2018, causing "life-threating" injuries to Hill. Because the evidence was sufficient to support Cooper's convictions, this assignment fails.

4. EXCESSIVE SENTENCES

Cooper contends that the sentences imposed were excessive. Specifically, he contends that because the court found he was a habitual criminal, the mandatory minimum for counts 2 and 3 was 10 years' imprisonment with no good time. He explains that just imposing the minimum sentences would result in him being incarcerated until he was over 50 years old. Cooper acknowledges the sentences imposed were within the statutory limits, but argues the sentences are excessive in light of Hill's failure to testify, the court's justification for the length of the sentence, and the requirement that the sentences run consecutive which rendered the sentences "untenable and amount[ed] to a denial of justice." Brief for appellant at 29.

Initially, we note that the enhancement hearing was not made part of the record before this court. However, at the sentencing hearing, the district court stated that Cooper's possession of a firearm by a prohibited person conviction was a second offense "per enhancement." Further, the court noted that an enhancement hearing had been held on the habitual criminal allegations and "that's all been completed."

Cooper was convicted of possession of a firearm by a prohibited person, enhanced to a second offense, a Class IB felony. See § 28-1206(3)(b). Cooper's sentence of 60 to 70 years' imprisonment is within the sentencing range for Class IB felonies, which are punishable by 20 years' to life imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 2016).

Cooper was convicted of first degree assault, a Class II felony, and use of a firearm to commit a felony, a Class 1C felony. See, § 28-308(2); § 28-1205(1)(c). The court also determined, for these two convictions, that Cooper was a habitual criminal and sentenced him accordingly. Cooper's sentences of 40 to 50 years' imprisonment for first degree assault and 45 to 50 years' imprisonment for use of a firearm to commit a felony are within the statutory sentencing range set forth in the habitual criminal statute, which provides for a mandatory minimum term of 10 years' imprisonment and a maximum term of not more than 60 years' imprisonment. See § 29-2221(1).

- 10 -

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of lawabiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

The court stated that it had considered the age, mentality, education, experience, social and cultural background, past criminal record, motivation for the offense, nature of the offense, and the presence of violence, along with the probation file, police reports, and the presentence investigation report (PSR). More specifically, the court indicated Cooper refused to cooperate with the presentence investigation but noted Cooper had been convicted of eight felonies. The court also noted Cooper served three prior prison sentences and was released from prison 2 months before being charged in the present matter. The court stated, "it seems pretty obvious, after the trial, that there really isn't any good reason why [Hill] is still alive . . . it's not like [Cooper] didn't try to kill him."

Although Cooper refused to participate in the preparation of the PSR, the PSR reflected that Cooper was 32 years old and his prior convictions included three convictions each for operating a motor vehicle during suspension and for failing to appear; two convictions each for felony criminal impersonation and for obstructing an officer; multiple convictions for various traffic violations; and one conviction each for felony possession of a firearm by a prohibited person, felony attempted robbery, felony criminal mischief, operating a motor vehicle during suspension second offense, possession of marijuana less than 1 ounce, child abuse/neglect, domestic violence assault, third-degree assault, disorderly conduct, trespassing, minor in possession, and failing to disperse.

Because the sentences imposed were within the applicable statutory sentencing ranges, his criminal history, the district court's consideration of factors relevant to sentencing including Cooper's criminal history, his commission of the current offenses only 2 months after being released from prison, and his failure to cooperate with probation regarding the PSR, we cannot say the district court abused its discretion in the sentences imposed.

As to Cooper's contention that the district court abused its discretion in ordering that his sentences be served consecutively, we first note that the court was required to impose a consecutive sentence for the offense of use of a firearm to commit a felony. See § 28-1205(3) (Reissue 2016) ("crimes defined in this section shall be treated as separate and distinct offenses from the felony being committed, and sentences imposed under this section shall be consecutive to any other sentence imposed"). Further, regarding Cooper's sentences for first degree assault and second offense possession of a firearm by a prohibited person, we note that generally it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently

- 11 -

or consecutively. *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018). Following our review of this record, including but not limited to these matters discussed above, we find no abuse of discretion in the court's decision to order Cooper's sentences to be served consecutively. This assignment of error fails.

### 5. INEFFECTIVE ASSISTANCE OF COUNSEL

Cooper's final assignment of error is that his trial counsel was ineffective in failing to present testimony from Hill, the victim in this case, who would have testified Cooper was not the individual who shot him; present testimony from Stewart, who would have testified Hill was not in possession of the firearm; present testimony from Detectives James and Cunningham, who would have testified Hill had previously been arrested for shooting Stewart; request the court continue the trial upon learning that Detectives James and Cunningham were unavailable to testify; consult with or call as a witness an independent forensic ballistics expert because the expert would have refuted the State's ballistics expert's testimony; ask any questions during trial of the State's expert, Harder; and ask the court for leave to withdraw due to a conflict.

When a defendant's trial counsel is different from his or her counsel on direct appeal, as is the case here, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. See *State v. Sinkey*, 303 Neb. 345, 929 N.W.2d 35 (2019). Otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *Id.* The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id.*

In order to avoid a procedural bar to a future postconviction proceeding, a claim of ineffective assistance of counsel must be presented with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id.*

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019). An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Sierra*, 305 Neb. 249, 939 N.W.2d 808 (2020).

When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal. *State v. Weathers, supra*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020). To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Sierra, supra*. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Weathers, supra*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. The two prongs of the ineffective assistance of counsel test under *Strickland v. Washington, supra*, may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *State v. Weathers, supra.*

### (a) Failure to Present Testimony From Hill and Stewart

Cooper assigns that he suffered from ineffective assistance of counsel when his counsel failed to call Stewart who would have testified that "'Hill' was not in possession of the firearm." Brief for appellant at 3. However, we note Cooper argues in his brief that Stewart would have testified "Cooper" was not in possession of a firearm. We interpret Cooper's reference to "Hill" in his assignment of error as a scrivener's error and analyze this assignment on the basis of his argument that Stewart, his passenger when Cooper was pulled over, would have testified that Cooper was not in possession of the firearm found in the driver's seat that Cooper vacated just prior to his arrest. Cooper similarly assigns and argues his counsel was ineffective for failing to call Hill as a witness who would have testified Cooper did not shoot him. As to both such allegations, which are made with sufficient particularity, we find the record is insufficient for this court to address them on direct appeal. Accordingly, these claims are preserved.

### (b) Failure to Present Testimony From Detectives James and Cunningham and Failure to Request Continuance

Cooper next claims his trial counsel was ineffective in failing to present testimony from Detectives James and Cunningham, who would have testified Hill had previously been arrested for shooting Stewart and for failing to request a continuance upon learning that Detectives James and Cunningham were unavailable to testify.

Cooper's specific allegation is that had Detectives James and Cunningham been called to testify, they would have testified to having previously arrested Hill in connection with the 2015 incident. But the fact that Hill was previously arrested in connection with the alleged 2015 incident is not relevant evidence that Hill was, in fact, involved in the prior incident. Having failed to allege any specific facts that James or Cunningham could testify to which would link Hill to the prior incident, we find that Cooper could not establish prejudice under his specific allegation here. Stated differently, attempts by Cooper to further propound the specific evidence suggested here would have been meritless. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017). These claims of ineffective assistance of counsel fail.

### (c) Failing to Consult or Call Independent Forensic Ballistics Expert

Cooper next argues his trial counsel should have obtained an analysis from an independent forensic ballistics expert to counter Harder's testimony about the results from her ballistics examination.

In order to avoid a procedural bar to a future postconviction proceeding, a claim of ineffective assistance of counsel must be presented with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Sinkey*, 303 Neb. 345, 929 N.W.2d 35 (2019).

Here, although Cooper assigns and argues that his trial counsel was ineffective for failing to call an expert witness to refute Harder's expert witness testimony, he fails to identify the substance of what a ballistics expert would have testified to which might refute the proffered testimony of the State's expert. See *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019) (holding failure to identify which witnesses would be called or how witnesses' testimony would refute evidence propounded fails to allege claim of deficient performance with sufficient particularity). A claim insufficiently stated is no different than a claim not stated at all. *State v. Hood*, 301 Neb. 207, 917 N.W.2d 880 (2018). Accordingly, as to this specific assignment, Cooper has failed to allege sufficient factual allegations of conduct that would constitute deficient performance by his trial counsel, and this claim is not preserved.

### (d) Failing to Question State's Expert

Cooper next contends his counsel was ineffective for failing to cross-examine Harder as to the substance of her claim that "the casing, [sic] she [test-fired from the firearm] matched the casing she tested which was found at the scene of the shooting." Brief for appellant at 27. Cooper asserts this lack of questioning left the jury to conclude Harder's testimony was accurate.

Again, Cooper has failed to specifically allege the substance of the questions his trial counsel should have asked Harder that would have tested the veracity of her testimony. Having failed to specifically allege the substance of the testimony his counsel failed to elicit, Cooper has failed to allege sufficient factual allegations of conduct that would constitute deficient performance by his trial counsel on this issue. This claim is not preserved.

### (e) Failure to Request Leave to Withdraw Due to Conflict

Cooper's final argument is that his trial counsel was ineffective for failing to request leave of court to withdraw as counsel due to a conflict of interest. This issue was actually raised by Cooper prior to trial when he filed a motion for replacement counsel for the same reason. As explained by Cooper in his motion, Cooper theorized he was entitled to new counsel because his current counsel was part of the public defender's office which had allegedly previously represented both Hill and Stewart. Cooper argued this created a conflict of interest. The district court overruled the motion, which Cooper assigned as error but failed to argue in his brief. Having failed to preserve that error, the court's ruling on the motion is not subject to further consideration. Instead, Cooper argues that because the conflict existed, it was incumbent upon his counsel to recuse himself and his counsel was ineffective for failing to do so.

A somewhat similar issue was presented in *State v. McMillion*, 23 Neb. App. 687, 875 N.W.2d 877 (2016). In *McMillion*, the defendant argued the district court erred in denying her attorney's motion to withdraw due, in part, to her Sixth Amendment right to effective assistance of counsel, which includes representation free of conflicts. The defendant specifically argued that because the State produced witnesses for trial that were formerly represented by the defendant's counsel, that former representation constituted a conflict of interest which should have resulted in the court sustaining her counsel's motion to withdraw. In addressing the defendant's claim, this court held:

> [The defendant] did have a Sixth Amendment right to effective assistance of counsel, however, which includes representation free of conflicts of interest which adversely affect her lawyer's performance. See *State v. Sandoval*, 280 Neb. 309, 788 N.W.2d 172 (2010). In Nebraska, the right to effective assistance of counsel has been interpreted to entitle the accused to the undivided loyalty of an attorney, free from any conflict of interest. *Id*. Whether a defendant's lawyer's representation violates a defendant's right to representation free from conflicts of interest is a mixed question of law and fact that an appellate court reviews independently of the lower court's decision. *Id*.

> The fact that an attorney has other clients, including one who would be a State witness and testify at trial, is not sufficient in and of itself to constitute a conflict of interest. *State v. Marchese*, 245 Neb. 975, 515 N.W.2d 670 (1994). The phrase "conflict of interest" denotes a situation in which regard for one duty tends to lead to disregard for another or where a lawyer's representation of one client is rendered less effective by reason of his or her representation of another client. *State v. Dunster*, 262 Neb. 329, 631 N.W.2d 879 (2001). The defendant who shows that a conflict of interest actually affected the adequacy of his or her representation need not demonstrate prejudice, but such conflict of interest must be shown to have resulted in conduct by counsel that was detrimental to the defense. *Id*.

*State v. McMillion*, 23 Neb. App. at 709, 875 N.W.2d at 901. After examining the facts in *McMillion*, this court ultimately held:

> In the present case, the parties stipulated that there was no relationship between the witnesses' cases and [the defendant's] case. At the time the witnesses signed their affidavits, their cases had been resolved and the time for appeal had passed. The witnesses' affidavits indicate that neither of them provided any information during the time they were represented by the public defender's office that would be useful in [the defendant's] case. Moreover, both witnesses signed waivers of any conflicts of interest and attorney-client privilege. As a result, we find no error in the district court's denial of [defendant's] counsel's motion to withdraw.

*Id*. at 710, 875 N.W.2d at 901.

Notwithstanding some similarities between *McMillion* and the case at bar, there is a significant procedural difference, which dictates the outcome here. In *McMillion*, the defendant appealed the decision of the district court overruling her counsel's motion to withdraw due to the

potential conflict. Here, as we stated above, Cooper assigned, but failed to argue, that the district court erred in overruling his motion to replace counsel due to this alleged conflict. Instead, he assigns and argues his counsel was ineffective for failing to request withdrawal due to the same conflict.

Based upon the court's ruling on Cooper's motion, a subsequent motion by counsel to withdraw would have been futile since the court previously ruled that no conflict of interest was present here. As we have already stated, as a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017). In sum, having failed to properly appeal from the district court's decision governing Cooper's motion to replace counsel, he cannot now claim his counsel was ineffective for failing to raise a meritless argument. Because the record is sufficient for this court to conclude Cooper's counsel was not ineffective for failing to request withdrawal following the court's ruling on the subject matter, the specific assignment of error fails, and the issue is not preserved.

## VI. CONCLUSION

In sum, we have considered and rejected Cooper's claims that the district court erred by excluding testimony regarding the 2015 shooting and in overruling Cooper's request for a mistrial; that the evidence was insufficient to support his convictions; and that the sentences imposed were excessive.

Regarding Cooper's claims of ineffective assistance of counsel, we determined his claims that counsel was ineffective for failing to call an independent forensic ballistics expert and failing to cross-examine the State's forensics expert were not sufficiently pled. We also found that because the record was sufficient to find Cooper's counsel was not ineffective, the following ineffective assistance of counsel claims failed: failure to present testimony from Detectives James and Cunningham, failure to request a continuance after learning the detectives were unavailable to testify, and failure to move to withdraw due to a conflict of interest. Finally, Cooper's claims that his trial counsel was ineffective for failing to present testimony from Hill and Stewart are preserved because the record on appeal is insufficient to review these claims.

AFFIRMED.