STATE OF NEBRASKA, APPELLEE, V.
JESSICA M. REID, APPELLANT.
743 N.W.2d 370

Filed January 4, 2008.    No. S-07-303.

Thomas J. Olsen, of Troia & Olsen, for appellant.

Jon Bruning, Attorney General, George R. Love, and Andy Maca, Senior Certified Law Student, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Under a plea agreement, Jessica M. Reid pled guilty to two counts of second degree murder for the deaths of Wayne and Sharmon Stock. The district court sentenced Reid to not less than life imprisonment nor more than life imprisonment for each murder. The court ordered Reid to serve the sentences consecutively. Reid appeals, assigning that her sentences are excessive. We affirm.

## BACKGROUND

Before embarking on this crime spree, Reid and her codefendant and boyfriend, Gregory D. Fester II, were living together in Horicon, Wisconsin. On April 15, 2006, they left Wisconsin. After stealing and abandoning two vehicles, they stole money, a 12 gauge shotgun, ammunition, and another vehicle from a Wisconsin home. They then drove to Iowa, planning to rob a few houses on their way to Arizona. They broke into two more houses in Iowa. They vandalized the first house and stole a .410 shotgun and ammunition and stole about $300 from the second house. Later that night, they decided to burglarize the Stocks' rural home in Cass County, Nebraska.

Fester entered the first floor through a window and opened a door for Reid. Fester carried the 12 gauge shotgun, and Reid carried the .410 shotgun. Reid stated to law enforcement that they did not stay on the first floor long before heading upstairs. She heard snoring coming from upstairs and removed her coat so she would not make any noise. She then followed Fester upstairs. According to Reid's account, Fester turned on the Stocks' bedroom light and then came back into the hallway and asked her what to do. She replied, "do something." Fester then ran back into the room and shot Wayne Stock in the leg while he was in bed or getting out of bed. Wayne Stock then struggled with Fester over the 12 gauge shotgun. While they were struggling, Reid shot Wayne Stock with the .410 shotgun.

She stated that Wayne Stock looked her directly in the eyes and that she then pulled the trigger. She further stated she shot Wayne Stock above his right eye and he fell forward. After Wayne Stock fell, Fester jumped over his body and shot him in the back of the head with the 12 gauge shotgun and then shot Sharmon Stock in the face. According to Reid, she and Fester immediately ran from the house and left in the stolen vehicle, which they later abandoned.

On April 23 and 24, 2006, police arrested Fester and Reid in Wisconsin for vehicle theft. Reid had left an inscribed ring in the Stocks' home that she and Fester had earlier stolen from the Wisconsin vehicle or home. The ring ultimately connected Reid and Fester to the murders.

During the investigation, law enforcement officers recovered evidence from Reid's home. On April 22, 2006, 5 days after the murders, Reid wrote in her journal: "I killed someone. He was older. I loved it. I wish I could do it all the time. If [Fester] doesn't watch it I am going to just leave one day and go do it myself." Also, at some point while Fester was in jail, Reid wrote a letter to him and left it at the home, apparently for him to retrieve after authorities released Fester on the Wisconsin charges. The letter was left in a cigarette box, which also contained a spent 12 gauge shell casing from the murders. In the letter, she wrote: "And this bullet well bunny it's the only thing left. And I loved it, but that's something we will talk about one day. But it's here also bcuz [sic] that was something I did for you, me and for you to love me as much as I love you."

On June 10, 2006, a Wisconsin detective interviewed Reid about the murders. During the interview, Reid denied that she shot Sharmon Stock but admitted that she shot Wayne Stock. On August 28, the State filed an information charging Reid with two counts of first degree murder in the Stocks' deaths. In exchange for her guilty pleas and agreement to testify against Fester, the State agreed to amend the information to two counts of second degree murder.

### ASSIGNMENT OF ERROR

Reid assigns that the district court abused its discretion by imposing excessive sentences.

## STANDARD OF REVIEW

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court.[1] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[2]

## ANALYSIS

Reid was convicted of two counts of second degree murder, a Class 1B felony.[3] Second degree murder is punishable by a minimum of 20 years' imprisonment and a maximum of life imprisonment.[4] Thus, the district court's sentences were within the statutory limits.

Reid, however, contends that the district court abused its discretion because she did not have a history of serious criminal conduct and because Fester committed the two murders. She argues that her culpability for the murders was much less than Fester's, yet she was not given any credit for cooperating with law enforcement or for making statements that exonerated two other suspects. Finally, she argues that although the district court emphasized her letter to Fester and journal entry, she has since changed and shown great remorse over her involvement in the murders.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime.[5] In imposing a sentence, the sentencing court is not limited to any mathematically applied set of factors.[6] The appropriateness

---

[1] *State v. Archie*, 273 Neb. 612, 733 N.W.2d 513 (2007).

[2] *State v. Walker*, 272 Neb. 725, 724 N.W.2d 552 (2006).

[3] Neb. Rev. Stat. § 28-304 (Reissue 1995).

[4] Neb. Rev. Stat. § 28-105 (Cum. Supp. 2006).

[5] See *Archie, supra* note 1.

[6] *State v. Lassek*, 272 Neb. 523, 723 N.W.2d 320 (2006).

of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[7]

The presentence report revealed that Reid was 17 years old at the time the Stocks were murdered and had dropped out of school in the 10th grade. She had been an honor roll student before her mother and stepfather separated when she was about 13. Over the next 2 years, she attended several new schools. She began using drugs and staying away from home for extended periods and missing a substantial amount of school. In 2004, she was placed on juvenile probation for theft. The Wisconsin Department of Social Services placed her in detention twice for parole violations. Because of the violations, authorities placed her in the juvenile intensive sanctions program. Between June 2005 and February 2006, authorities placed her in custody six times for violations of the program, including theft, criminal damage to property, and possession of drug paraphernalia. She did not comply with drug and alcohol treatment services or pay restitution. Her juvenile caseworker described her as "extremely dishonest when dealing with anybody in authority" and intent on disregarding restrictions and sanctions. After she was extradited to Nebraska, Wisconsin dismissed pending felony charges against her. A probation officer assessed she was a high risk for rearrest.

At the sentencing hearing, the court recognized that Reid was 17 when the murders were committed. It found that she was of "normal to above average intelligence" but had dropped out of school because of drug use and her involvement with "the wrong crowd." It further found that her history of drug use was a contributing factor in the crime. Finally, the court recognized that her trouble with the law began around the time that her mother and stepfather divorced. But the court concluded that her role in the Stocks' deaths was significant. The court stated that if Reid had not intervened when Wayne Stock was struggling with Fester over the gun, it was possible neither death would have occurred. Reid's journal and letter troubled the court. The court concluded:

---

[7] *Id.*

The offenses involved here were brutal, senseless crimes. By all accounts, the victims were wonderful people, respected by members of their community and church and loved very much by their family. They experienced fear and horror which is hard to imagine. They were brutally murdered in the sanctity of their own bedroom, their own home.

. . . It's hard, in this case, to consider anything less than life sentences.

We agree. We have reviewed Reid's statements to law enforcement regarding the murders. Contrary to Reid's arguments on appeal, the record shows that in police interviews, Reid specifically stated that she knew she had shot Wayne Stock directly above his right eye with the .410 shotgun and that she believed she had killed him before Fester shot him. Her initial statements to law enforcement about her role in shooting Wayne Stock were made to rebut the suspicion that she had shot Sharmon Stock. Many of her later statements that she might have missed while shooting at Wayne Stock were a smokescreen to minimize her role in the murders. Similarly, the statements that she claims helped to exonerate two other suspects were made after she had implicated the suspects. Apparently, the statements were motivated in part by her desire to show that she had not participated in a planned, hired killing. Finally, we believe her journal entry is the most compelling evidence of her culpability and callousness. It keeps whispering, "I killed someone. . . . I loved it. I wish I could do it all the time." As we stated in *State v. Fester*,[8] "[w]ithout provocation or justification, two innocent people were callously murdered in the solitude and sanctity of their own home. Any lesser sentence under these circumstances, even when considering the mitigating factors . . . would diminish the seriousness of this crime and promote disrespect for the law."

## CONCLUSION

The district court did not err in sentencing Reid to two consecutive life sentences. The judgment of the court is affirmed.

AFFIRMED.

---

[8] *State v. Fester, post* p. 786, 789-90, 743 N.W.2d 380, 383 (2007).