17 Neb.App. 267
STATE OF NEBRASKA, APPELLEE,
v.
DOUGLAS E. DRAGOO, APPELLANT.
No. A-08-113.
Court of Appeals of Nebraska.
Filed November 25, 2008.
Patrick P. Carney and Jonathan R. Brandt, of Carney Law, P.C., for appellant.
Jon Bruning, Attorney General, and Erin E. Leuenberger for appellee.
IRWIN, SIEVERS, and CARLSON, Judges.
CARLSON, Judge.

INTRODUCTION
Pursuant to this court's authority under Neb. Ct. R. App. P. § 2-111(B)(1), this case was ordered submitted without oral argument. Douglas E. Dragoo appeals from his convictions and sentences in the district court for Antelope County for count I, driving under the influence of alcoholic liquor (DUI), fourth offense (with a blood alcohol concentration of .15 of 1 gram or more), and count II, DUI causing serious bodily injury. Based on the reasons that follow, we reverse the judgment of conviction and sentence for count I and remand the matter to the district court to dismiss count I. We affirm the judgment of conviction and sentence for count II.

BACKGROUND
On December 15, 2006, at approximately 10:20 p.m., Dragoo was involved in a motor vehicle accident with another vehicle. Just before the accident, Dragoo was driving his pickup truck on 529 Avenue, a county road in Antelope County that runs north and south. Dragoo was traveling north and was approaching the intersection of 529 Avenue and U.S. Highway 275, which runs east and west. There are stop signs at the intersection for traffic going north and south on 529 Avenue. Amanda Thies and Kaylin Plugge were traveling east on Highway 275 in Thies' car. As they approached the intersection, they noticed Dragoo's truck coming from the south. Thies, who was driving, testified that she could tell that the truck was not going to stop at the stop sign before entering the intersection. Thies testified that the truck pulled out into the intersection in front of her car and that the two vehicles collided.
Deputy Michael Wright of the Antelope County sheriff's office was dispatched to the scene. When Wright arrived, he walked over to the truck involved in the accident, which he recognized as belonging to Dragoo. Wright made contact with Dragoo, who was sitting in the driver's seat. Dragoo's girl-friend was sitting next to him. Wright testified that Dragoo had a large cut on the left side of his head, but stated he did not want medical attention and just wanted to go home. Wright also testified that he saw six unopened cans of beer on the passenger floor of the truck. Wright testified that Dragoo exited the vehicle and that while speaking to Dragoo, Wright could smell the odor of alcoholic beverages coming from Dragoo's person. Wright also testified that Dragoo was unsteady on his feet, could not stand still, and "staggered around a little bit." Wright testified that Dragoo's speech was slow and slurred.
Dragoo eventually agreed to get medical treatment, and he was transported by ambulance to a hospital. Wright spoke to Dragoo again at the hospital. Dragoo admitted that he was the driver of the truck, that he had been at a bar before the accident and was on his way home, and that he had been drinking that evening. Wright asked Dragoo how much he had to drink, to which Dragoo responded, "[E]nough." Wright then placed Dragoo under arrest and read him the postarrest chemical test advisement form, which Dragoo signed. Dragoo submitted to having his blood drawn, and a blood alcohol test was subsequently performed. The result of the test showed that Dragoo's blood alcohol concentration on the night of the accident was.222 of 1 gram of alcohol per 100 milliliters of blood.
Thies and Plugge were also taken to the hospital by ambulance. Thies suffered a broken collarbone as a result of the collision. She wore a brace for 6 weeks after the accident and was unable to use her left arm at all for 2 weeks. Plugge suffered tendonitis in her left knee and a bump on her head. She had a bruise on her left leg from her knee down to the bottom of her shin. She was on crutches for 3 weeks for the knee injury.
The day after the accident, Wright met with Dragoo in an interview room at the sheriff's office. After being advised of his Miranda rights, Dragoo agreed to speak with Wright. Dragoo remembered leaving the bar, driving out of town, and coming up to the stop sign. Wright testified that Dragoo initially stated that he did not see Thies' vehicle before the collision, but later stated that he remembered driving up to the stop sign but did not remember anything after that. When asked how much he had to drink prior to the accident, Dragoo told Wright that he had three or four mixed drinks. When Wright asked Dragoo if he thought he was intoxicated the night of the accident, Dragoo responded that he was not intoxicated "beyond his capabilities."
On March 26, 2007, an information was filed in the district court for Antelope County charging Dragoo with DUI, fourth offense, a Class IIIA felony. An arraignment was held, and Dragoo entered a plea of not guilty. On May 11, an amended information was filed charging Dragoo with count I, DUI, fourth offense (with a blood alcohol concentration of .15 or more), a Class III felony, and count II, DUI causing serious bodily injury, a Class IIIA felony.
On October 15, 2007, Dragoo filed a motion to suppress any and all evidence, including statements made by Dragoo, alleging that Dragoo had been arrested without probable cause and/or reasonable suspicion. A hearing was held on the motion, and following the hearing, the trial court overruled the motion to suppress, finding that Wright had probable cause to arrest Dragoo.
The matter proceeded to a jury trial, held on October 15 and 16, 2007. At the conclusion of the trial, the jury found Dragoo guilty of count I, DUI, and found that his blood alcohol concentration equaled or exceeded .15 of 1 gram per 100 milliliters of blood. The jury also found Dragoo guilty of count II, DUI causing serious bodily injury. The trial court entered judgment on the verdicts. Prior to sentencing, an enhancement hearing was held and the court found that Dragoo had three prior convictions for purposes of enhancement for DUI. Accordingly, the court found the current DUI conviction pursuant to count I to be a fourth offense. The fourth offense and the finding that Dragoo's blood alcohol concentration equaled or exceeded .15 of 1 gram made count I a Class III felony for sentencing purposes. See Neb. Rev. Stat. § 60-6,197.03(8) (Cum. Supp. 2006). The trial court sentenced Dragoo to 24 to 36 months' imprisonment for count I and 12 to 18 months' imprisonment for count II. The court ordered the sentences to be served consecutively. The court also revoked Dragoo's driver's license for a period of 15 years.

ASSIGNMENTS OF ERROR
Dragoo assigns that the trial court erred in (1) sentencing him to multiple punishments for the same offense in violation of the Double Jeopardy Clause, (2) failing to rearraign him on the crimes charged in the amended information, (3) overruling his motion to suppress, and (4) imposing excessive sentences.

ANALYSIS

Violation of Double Jeopardy Clause.
[1, 2] Dragoo first assigns that the trial court erred by sentencing him to multiple punishments for the same offense, in violation of the Double Jeopardy Clause. This assignment of error presents matters of statutory construction; as such, it presents questions of law. See State v. McBride, 252 Neb. 866, 567 N.W.2d 136 (1997). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. State v. Molina, 271 Neb. 488, 713 N.W.2d 412 (2006); State v. Furrey, 270 Neb. 965, 708 N.W.2d 654 (2006).
[3-5] The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. State v. Molina, supra; State v. Winkler, 266 Neb. 155, 663 N.W.2d 102 (2003). The protection provided by Nebraska's double jeopardy clause is coextensive with that provided by the U.S. Constitution. State v. Molina, supra; State v. Marshall, 269 Neb. 56, 690 N.W.2d 593 (2005). While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the clause does not prohibit the State from prosecuting a defendant for multiple offenses in a single prosecution. State v. Mata, 273 Neb. 474, 730 N.W.2d 396 (2007); State v. Humbert, 272 Neb. 428, 722 N.W.2d 71 (2006).
[6, 7] Whether multiple convictions in a single trial lead to multiple punishments depends on whether the Legislature, when designating the criminal statutory scheme, intended that cumulative sentences be applied for conviction on such offenses. State v. Mata, supra; State v. Iromuanya, 272 Neb. 178, 719 N.W.2d 263 (2006). When the Legislature has demonstrated an intent to permit cumulative punishments, the Double Jeopardy Clause is not violated as long as the court imposes the cumulative punishments in a single proceeding. State v. Mata, supra; State v. Spotts, 257 Neb. 44, 595 N.W.2d 259 (1999).
[8, 9] In Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), the U.S. Supreme Court defined the test to be used in determining whether two statutes penalize the same offense. The Court held that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or one is whether each provision requires proof of a fact which the other does not. State v. Molina, supra; State v. Winkler, supra. In United States v. Dixon, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993), the Court stressed that the Blockburger test applies equally to multiple punishment and multiple prosecution cases.
[10] The Blockburger, or "same elements," test asks whether each offense contains an element not contained in the other. State v. Winkler, supra; State v. Stubblefield, 249 Neb. 436, 543 N.W.2d 743 (1996). If not, they are the same offense and double jeopardy bars additional punishment and successive prosecution. Id.
[11] Applying the Blockburger test to this case, we compare the elements of DUI and DUI causing serious bodily injury. DUI as defined by Neb. Rev. Stat. § 60-6,196 (Reissue 2004) requires proof that the defendant was operating or in the actual physical control of a motor vehicle (1) while under the influence of alcoholic liquor or (2) when having a concentration of.08 of 1 gram or more by weight of alcohol per 100 milliliters of his or her blood. The charge against Dragoo also alleged that this is Dragoo's fourth DUI offense and that he had a blood alcohol concentration of .15 of 1 gram or more by weight of alcohol per 100 milliliters of his blood. These are both penalty enhancement provisions found in § 60-6,197.03 for persons convicted of a violation of § 60-6,196. As this court has previously recognized:
The plain language of [§ 60-6,196] criminalizes the act of DUI. The fact that the defendant has previously been convicted of DUI is irrelevant to guilt or innocence and is relevant only to the sentence to be meted out. Indeed, the sole difference between a first, second, or third conviction for DUI is the penalty authorized. . . .
. . . [W]e conclude that the offense the Legislature intended to proscribe is DUI. That the defendant has prior DUI convictions merely enhances the sentence.
State v. Werner, 8 Neb. App. 684, 691, 600 N.W.2d 500, 506 (1999). By extension, the amount of a defendant's blood alcohol concentration is not an element of the crime of DUI, but merely enhances the sentence. Accordingly, the allegations that this is Dragoo's fourth DUI offense and that he had a blood alcohol concentration of .15 of 1 gram or more by weight of alcohol per 100 milliliters of his blood are sentencing enhancement provisions under § 60-6,197.03, and not elements of the offense.
[12] The material elements of the crime of DUI causing serious bodily injury are (1) the defendant must have been operating a motor vehicle; (2) the defendant must have been operating the vehicle in violation of § 60-6,196 (DUI); and (3) the defendant's act of DUI, in violation of § 60-6,196, must proximately cause serious bodily injury. State v. Bartlett, 3 Neb. App. 218, 525 N.W.2d 237 (1994). Causing serious bodily injury is an element of DUI causing serious bodily injury, but is not an element of DUI. Therefore, DUI causing serious bodily injury contains an element that DUI does not contain; however, the reverse is not true. DUI does not require proof of an element that DUI causing serious bodily injury does not. Thus, each of the charged offenses does not require proof of an element that the other does not, as the Blockburger test requires.
[13] The predicate offense for DUI causing serious bodily injury is DUI in violation of § 60-6,196, making DUI a lesser included offense of DUI causing serious bodily injury. Consequently, the commission of DUI causing serious bodily injury necessarily includes the offense of DUI. The constitutional protection against double jeopardy, therefore, applies to Dragoo's convictions on counts I and II. The trial court imposed consecutive sentences for DUI and DUI causing serious bodily injury. Such sentences are cumulative sentences for the same offense and constitute separate and multiple punishments for the same offense, a denial of the protection against double jeopardy, afforded by both the state and federal Constitutions. We must, therefore, reverse the district court's judgment for Dragoo's conviction and sentence for DUI (count I) and remand this matter to the district court for dismissal of count I in the amended information.

Arraignment.
Dragoo next assigns that the trial court erred in failing to rearraign him on the crimes charged in the amended information. Neb. Rev. Stat. § 29-1816 (Reissue 1995) provides in part: "If the accused appears in person and by counsel and goes to trial before a jury regularly impaneled and sworn, he or she shall be deemed to have waived arraignment and a plea of not guilty shall be deemed to have been made." See, also, State v. Hernandez, 268 Neb. 934, 689 N.W.2d 579 (2004).
Dragoo appeared in person, was represented by counsel, and proceeded to trial before a jury on the amended information. Further, during preliminary instructions at trial, the trial court informed the jury of the two counts against Dragoo and stated that Dragoo had pled not guilty to counts I and II. Dragoo did not object to the court's statement. Accordingly, Dragoo has waived any argument that he should have been arraigned on the amended information.

Motion to Suppress.
[14] Dragoo next assigns that the trial court erred in overruling his motion to suppress. Dragoo argues that the motion to suppress should have been granted because Wright did not have probable cause to arrest Dragoo and obtain a sample of his blood. A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. State v. Faber, 264 Neb. 198, 647 N.W.2d 67 (2002); State v. Ildefonso, 262 Neb. 672, 634 N.W.2d 252 (2001). In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. Id.
The trial court's finding that Wright had probable cause to arrest Dragoo is supported by evidence adduced at the suppression hearing. At the hearing, Wright testified that on December 15, 2006, he was dispatched to a motor vehicle accident on Highway 275 in Antelope County. Wright testified that when he arrived at the scene, he walked over to the pickup involved in the accident, which he recognized as belonging to Dragoo. Wright testified that when he looked into the pickup, Dragoo was sitting in the driver's seat of the pickup and his girlfriend was sitting next to him. Wright testified that Dragoo had a large cut on the left side of his head and was bleeding profusely. Wright detected an odor of alcohol in the vehicle. He also observed unopened cans of beer on the pickup's floor on the passenger side.
Wright testified that Dragoo and his girlfriend exited the vehicle and that Dragoo initially indicated he did not want any medical treatment. Wright testified that while talking with Dragoo when he was outside the pickup, Wright noticed a strong odor of alcohol coming from Dragoo's person. Wright also noticed that Dragoo's speech was slow and slurred and that Dragoo was somewhat unsteady on his feet while Wright was talking to him. Wright testified that Dragoo eventually agreed to go to the hospital and was transported there by ambulance.
Wright testified that he spoke with Dragoo at the hospital. Wright testified that Dragoo told him that just before the accident, he and his girlfriend were driving home after leaving a bar. Wright testified that Dragoo admitted to being the driver of the pickup and admitted to drinking alcohol. When Wright asked Dragoo how much alcohol he drank, Dragoo responded, "[E]nough." Wright testified that there was a strong odor of alcohol coming from Dragoo when Wright spoke to him at the hospital. Wright testified that he tried twice to administer a preliminary breath test to Dragoo, but Dragoo was unable to give a sufficient breath sample both times. At that point, Wright placed Dragoo under arrest and read him the postarrest chemical test advisement form.
Wright testified that he also spoke with Thies and Plugge at the hospital, both of whom told Wright that Dragoo pulled out in front of them without stopping at the intersection.
Based on the evidence presented at the suppression hearing, Wright had probable cause to arrest Dragoo and the trial court did not err in overruling Dragoo's motion to suppress.

Excessive Sentences.
Finally, Dragoo assigns that the trial court erred in imposing excessive sentences. Dragoo argues that the sentences are excessive because the trial court ordered that they run consecutively, thereby constituting multiple punishments for the same crime, in violation of the Double Jeopardy Clause. This argument was addressed above, and we do not address it further here. We will, however, address whether the sentence imposed for DUI causing serious bodily injury is excessive.
[15] Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. State v. Hernandez, 273 Neb. 456, 730 N.W.2d 96 (2007); State v. Walker, 272 Neb. 725, 724 N.W.2d 552 (2006). DUI causing serious bodily injury is a Class IIIA felony having no minimum penalty and a maximum punishment of 5 years' imprisonment, a $10,000 fine, or both. Neb. Rev. Stat. § 60-6,198 (Cum. Supp. 2006); Neb. Rev. Stat. § 28-105 (Cum. Supp. 2006). The trial court sentenced Dragoo to 12 to 18 months' imprisonment on the DUI causing serious bodily injury conviction. The sentence imposed by the trial court is within the statutory limits. Accordingly, we need only determine whether the sentence imposed was an abuse of discretion.
[16-18] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. State v. Fester, 274 Neb. 786, 743 N.W.2d 380 (2008); State v. Archie, 273 Neb. 612, 733 N.W.2d 513 (2007). We have further held that, in considering a sentence to be imposed, the sentencing court is not limited in its discretion to any mathematically applied set of factors. State v. Fester, supra. Obviously, depending on the circumstances of a particular case, not all factors are placed on a scale and weighed in equal proportion. Id. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all facts and circumstances surrounding the crime and the defendant's life. Id.; State v. Reid, 274 Neb. 780, 743 N.W.2d 370 (2008).
Dragoo has a criminal history that dates back to 1960. He has been convicted of willful reckless driving, driving during suspension of his license (twice), assault and battery, no valid operator's license (three times), no valid registration, violation of motor carrier's safety regulations (twice), and criminal mischief. In addition to the current offense, Dragoo has been charged with DUI five times, resulting in three convictions. After committing the current offense, Dragoo was charged with assault in the third degree. The charge was amended to disturbing the peace, and he was convicted of that charge. The trial court found that, based on Dragoo's prior criminal history and on the nature and circumstances of the current offense, incarceration was necessary and that a sentence lesser than incarceration would depreciate the seriousness of the crime or promote disrespect for the law. We conclude that the sentence imposed by the trial court is not an abuse of judicial discretion.

CONCLUSION
We conclude that Dragoo's consecutive sentences for DUI and DUI causing serious bodily injury constitute multiple punishments for the same offense, a denial of the protection against double jeopardy. We therefore reverse the district court's judgment for Dragoo's conviction and sentence for count I, DUI, and remand this matter to the district court with directions to dismiss count I of the amended information. Because there is not error in Dragoo's conviction and sentence for count II, DUI causing serious bodily injury, the judgment of the district court regarding count II is affirmed.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.