Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/02/2026 08:06 AM CST

State of Nebraska, appellee, v.
Armon K. Rejai, appellant.
___ N.W.3d ___

Filed January 2, 2026.    No. S-24-808.

1.  **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
2.  **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
3.  **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed.
4.  **Sentences.** The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.
5.  **Sentences: Appeal and Error.** It is not the proper function of an appellate court to conduct a de novo review of the record to determine what sentence it would impose.
6.  **Sentences: Evidence.** A sentencing court has broad discretion as to the source and type of evidence and information that may be used in determining the kind and extent of the punishment to be imposed, and evidence may be presented as to any matter that the court deems relevant to the sentence.
7.  **Sentences: Appeal and Error.** The power to impose sentences is entrusted to the sentencing court and not to an appellate court.
8.  **Constitutional Law: Sentences: Statutes: Appeal and Error.** Once it is determined that the sentence prescribed by statute is constitutional

and that the sentence imposed is within statutory limits, the issue in reviewing a sentence is not whether someone else in a different case received a lesser sentence, but whether the defendant in the subject case received an appropriate one.

9. **Sentences: Appeal and Error.** Appellate courts are under no duty to conduct a de novo review of the record to determine whether a sentence is proportionate.

Appeal from the District Court for Lancaster County: Susan I. Strong, Judge. Affirmed.

Kristi J. Egger, Lancaster County Public Defender, and Amanda R. Baskin for appellant.

Michael T. Hilgers, Attorney General, Jacob M. Waggoner, and Danielle Jewell, Senior Certified Law Student, for appellee.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ., and Martinez, District Judge.

Cassel, J.

## INTRODUCTION

In this direct appeal from a life-to-life sentence imposed upon a plea-based conviction for second degree murder, Armon K. Rejai asserts that the sentence—though within statutory limits—was excessive. He relies upon a comparative analysis and, particularly, upon a statement in our opinion in *State v. Iromuanya*.[1] We disapprove that statement and reaffirm our other sentencing jurisprudence. Finding no abuse of discretion, we affirm the judgment.

## BACKGROUND

### Shooting

Rejai's conviction arises from a shooting that occurred on January 21, 2023, outside his apartment in Lancaster County, Nebraska. The victim was his 18-year-old neighbor, Julian

---

[1] *State v. Iromuanya*, 272 Neb. 178, 719 N.W.2d 263 (2006).

Martinez. From the plea's unchallenged factual basis, we summarize the events.

Rejai told police that he shot Martinez following a disturbance with his neighbors earlier that morning. Rejai had taken his dog for a walk. On the way back to his apartment, he saw Martinez' roommates in their backyard with their dogs. Rejai told them that it was "illegal to have [their] dog off the leash." Following a verbal exchange, Rejai went inside his apartment. Shortly thereafter, he stepped outside and sprayed his neighbors with pepper spray, before retreating back inside his apartment.

Martinez threw something at Rejai's apartment and began pounding on Rejai's door. Rejai retrieved a handgun and his cell phone. When the pounding stopped, he opened his door. He told police that Martinez lunged at him, so he shot Martinez one time in the chest. He shut his door and called the 911 emergency dispatch service.

Police responded and took Rejai into custody. Medical responders transported Martinez to a hospital, where he was pronounced dead. An autopsy confirmed that the cause of his death was the gunshot wound.

## Charges and Plea Agreement

The State initially charged Rejai with first degree murder and use of a firearm to commit a felony. It later amended the information to add two counts of second degree assault. Pursuant to a plea agreement, Rejai ultimately pled no contest to second degree murder, a Class IB felony,[2] and the State dismissed the other charges.

Before accepting his plea, the court asked Rejai twice whether he understood the possible penalty of 20 years' to life imprisonment for second degree murder. He responded affirmatively. The court accepted his plea and found him guilty of

---

[2] See Neb. Rev. Stat. § 28-304 (Reissue 2016).

second degree murder. It ordered a presentence investigation report (PSR) and scheduled the matter for sentencing.

PSR

The appeal revolves around the PSR, which consists of more than 1,600 pages. We summarize the portions highlighted by the parties. Two themes predominate: Rejai's psychological evaluation and his lack of prior convictions.

Rejai retained a licensed clinical psychologist as a defense expert for sentencing. Following a psychological evaluation, she diagnosed Rejai for the first time with autism spectrum disorder. Rejai was 30 years old at that time.

The psychologist's diagnostic rationale provided, in part, that Rejai had "persistent deficits in social communication and social interaction across multiple contexts, including at home [and] when he was in school, at work and with neighbors" and that he had an "abnormal social approach, as well as reduced sharing of emotions and affect." His symptoms were "present during the early developmental period and they cause[d] clinically significant impairment in social, occupational and other areas of functioning." His other diagnoses included generalized anxiety disorder and post-traumatic stress disorder.

The court received differing risk assessments. The psychologist scored Rejai on the "Level of Service/Case Management Inventory" as a 10—low risk. Using the same test, the probation officer computed a score of 21—high risk.

Rejai offered a written personal statement explaining how his autism spectrum disorder diagnosis had changed his perspective and increased his self-awareness. The personal statement also discussed his relationship with his dog and his interactions with his neighbors leading up to the shooting.

Rejai had no prior convictions. Several years earlier, the State had charged him with terroristic threats arising from conflict with his former neighbors at a different residence. Defense counsel deposed the former neighbors, and the

depositions were included in the PSR. Following a trial, Rejai was acquitted of that charge.

## Sentencing

Before sentencing, the court held a hearing and gave the parties an opportunity to make additions or corrections to the PSR. It confirmed that it had received and reviewed updates to the PSR previously submitted by the defense.

At the close of the hearing, the court imposed the maximum sentence of not less than nor more than life imprisonment. To the extent that the sentencing comments are pertinent to the assigned error, they appear in the analysis below.

Rejai filed a timely appeal. Because of the life sentence imposed, the appeal was placed on our docket.[3] We overruled the State's motion for summary affirmance.[4]

## ASSIGNMENT OF ERROR

Rejai assigns only that the district court abused its discretion in imposing an excessive sentence.

## STANDARD OF REVIEW

[1,2] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[5] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[6]

## ANALYSIS

Rejai's sole assignment of error asserts that the district court imposed an excessive sentence. He presents three arguments, but all lack merit.

---

[3] See Neb. Rev. Stat. § 24-1106(1) (Cum. Supp. 2024).

[4] See Neb. Ct. R. App. P. § 2-107(B)(2) (rev. 2022).

[5] *State v. Hagens, ante* p. 65, 26 N.W.3d 174 (2025).

[6] *State v. Dawn, ante* p. 342, 27 N.W.3d 9 (2025).

## Basic Sentencing Principles

[3] Because it is undisputed that Rejai's sentence falls within the statutory limits,[7] the question is whether the district court abused its discretion in the sentence it imposed upon him. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed.[8]

[4] In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.[9] "While these factors should instruct a sentencing court, they do not comprise a mathematical formula that must be rigidly implemented. Rather, they are among the relevant factors that may be considered."[10] The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[11]

With these principles in place, we begin with Rejai's arguments that the district court erred in weighing certain factors and considering particular portions of the PSR. We then turn to his argument relying on *Iromuanya*.

---

[7] See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024). See, also, Neb. Rev. Stat. § 29-2204(2) (Cum. Supp. 2024).

[8] *State v. Sutton*, 319 Neb. 581, 24 N.W.3d 43 (2025).

[9] *Id.*

[10] *State v. Ezell*, 314 Neb. 825, 840, 993 N.W.2d 449, 460-61 (2023).

[11] *State v. Hagens, supra* note 5.

## No Abuse of Discretion in Weighing
## Mitigating Factors

Rejai contends that the district court failed to "adequately consider"[12] various mitigating factors. He largely relies upon the psychological evaluation and his personal statement in the PSR. We are not persuaded.

The appellate record shows that the district court considered the relevant mitigating factors. Before sentencing Rejai, the court held a full evidentiary hearing and gave him an opportunity to present mitigating evidence. It received and reviewed evidence he presented during the hearing, and it explicitly stated that it had reviewed the information he previously added to the PSR. It stated that it pronounced his sentence having considered all of the evidence and based upon the relevant factors.

[5] We see no abuse of discretion. It is not the proper function of an appellate court to conduct a de novo review of the record to determine what sentence it would impose.[13]

## No Abuse of Discretion in Considering
## Content of PSR

Rejai next argues that the district court erred in considering certain portions of the PSR: the deposition testimony of his former neighbors and a statement that he allegedly made to a fellow inmate while awaiting trial in this case. A corrections officer's report mentioned an anonymous tip that Rejai "'told his [cellmate] he was thinking of killing two more people before he gets found guilty.'" The PSR provided no context or other information regarding this statement.

Within its lengthy sentencing comments, the court confirmed that it had "read the depositions of [Rejai's former] neighbors." After describing their testimony, it commented,

---

[12] Brief for appellant at 14.

[13] *State v. Hagens, supra* note 5.

"And there's even an anonymous report that you threatened to kill someone in the jail." Rejai made no objections during the sentencing hearing regarding consideration of the depositions or the anonymous tip.

[6] Our law is well settled. The sentencing phase is separate and apart from the trial phase, and the traditional rules of evidence may be relaxed following conviction so that the sentencing authority can receive all information pertinent to the imposition of sentence.[14] A sentencing court has broad discretion as to the source and type of evidence and information that may be used in determining the kind and extent of the punishment to be imposed, and evidence may be presented as to any matter that the court deems relevant to the sentence.[15] "[A] court does not violate a defendant's due process rights by considering information in a presentence report when the defendant had notice and an opportunity to obtain access to the information in the report and to deny or explain the information to the sentencing authority."[16]

In light of these principles, we see no merit to Rejai's argument. The district court did not abuse its discretion by considering the content of the PSR.

## No Merit to Comparative
## Analysis Argument

Finally, Rejai urges that we conduct a comparative analysis of his sentence with the sentences imposed in other cases.[17] We decline to do so.

---

[14] *State v. Montoya*, 305 Neb. 581, 941 N.W.2d 474 (2020).

[15] *State v. Lara*, 315 Neb. 856, 2 N.W.3d 1 (2024).

[16] *State v. Galindo*, 278 Neb. 599, 665, 774 N.W.2d 190, 242 (2009).

[17] See, *State v. Gray*, 307 Neb. 418, 949 N.W.2d 320 (2020); *State v. Davis*, 276 Neb. 755, 757 N.W.2d 367 (2008); *State v. Reid*, 274 Neb. 780, 743 N.W.2d 370 (2008); *State v. Marrs*, 272 Neb. 573, 723 N.W.2d 499 (2006); *State v. Iromuanya, supra* note 1; *State v. Smith*, 240 Neb. 97, 480 N.W.2d 705 (1992).

Rejai's argument hinges on *Iromuanya*,[18] where a majority of this court concluded that the minimum term of a life-to-life sentence imposed for second degree murder was excessive and an abuse of the district court's discretion. Rejai highlights the majority opinion's reasoning that the "[district] court could not have imposed a more severe minimum term for second degree murder on a hardened criminal with a lengthy history of violent felony convictions."[19] Citing our statutory authority,[20] the majority opinion reduced the sentence in that case. That part of the opinion drew three dissents.

The State relies on this court's more recent decision in *State v. Morton*.[21] There, the court's opinion reversed a Nebraska Court of Appeals' decision that deemed a sentence to be an "'extreme outlier'"[22] compared to the sentences imposed in other cases that the Court of Appeals found "'instructive.'"[23] We reasoned, in part, that the "district court was under no obligation to conduct a comparative analysis of 'similar' cases—an inquiry that would be entirely impractical for trial courts to undertake."[24] We recalled that appellate courts' conducting comparative analyses is also problematic.

[7-9] We adhere to our principles in *Morton*. The power to impose sentences is entrusted to the sentencing court and not to an appellate court.[25] Once it is determined that the sentence prescribed by statute is constitutional and that the sentence imposed is within statutory limits, the issue in reviewing a sentence is not whether someone else in a different case

---

[18] *State v. Iromuanya, supra* note 1.

[19] *Id*. at 216, 719 N.W.2d at 295.

[20] See Neb. Rev. Stat. § 29-2308 (Reissue 2016).

[21] *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021).

[22] *Id.* at 370, 966 N.W.2d at 68.

[23] *Id.* at 370, 966 N.W.2d at 69.

[24] *Id.* at 372, 966 N.W.2d at 70.

[25] *State v. Morton, supra* note 21.

received a lesser sentence, but whether the defendant in the subject case received an appropriate one.[26] Appellate courts are under no duty to conduct a de novo review of the record to determine whether a sentence is proportionate.[27]

We take this opportunity to dispel the misconceptions that, in reviewing excessive sentence claims, the *Iromuanya* majority opinion imposes a duty to conduct comparative analyses or that such analyses are persuasive. To the extent that the majority opinion's statement that the "court could not have imposed a more severe minimum term for second degree murder on a hardened criminal with a lengthy history of violent felony convictions" suggests otherwise, we disapprove it.[28]

Here, a comparative analysis is neither necessary nor persuasive. Rejai's argument relying on that technique lacks merit.

## CONCLUSION

As set forth in the analysis:

• We reject Rejai's comparative analysis argument, which emphasizes a single statement from our opinion in *Iromuanya*. We disapprove that statement and reaffirm our other sentencing jurisprudence.

• We conclude that Rejai's sentence is not excessive and, thus, is not an abuse of discretion.

We affirm the district court's judgment.

Affirmed.

---

[26] *Id.*

[27] *Id.*

[28] *State v. Iromuanya, supra* note 1, 272 Neb. at 216, 719 N.W.2d at 295.