IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. SOLIS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

ALEX H. SOLIS, APPELLANT.


Filed June 23, 2026.    No. A-25-837.


Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Candice C. Wooster, of Brennan, Nielsen, & Wooster Law Offices, for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.


MOORE, PIRTLE, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Alex H. Solis appeals from his plea-based conviction of possession of methamphetamine with the intent to deliver. He contends that the sentence imposed is excessive and that his trial counsel was ineffective in failing to contact witnesses, failing to obtain security camera footage, and failing to obtain body camera footage. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

On July 10, 2024, investigators with the Lincoln Lancaster County Narcotics Task Force were attempting to locate Solis, who had a felony arrest warrant. Additionally, investigators had received information from confidential informants that Solis was selling large quantities of methamphetamine and fentanyl; that he was set to be returning from Colorado, where he had gone to obtain a quantity of fentanyl; and that he was expected to be in the possession of a U-Haul around a certain identified area in Lancaster County. Officers located the U-Haul truck parked in

an alley near a residence known to be associated with Solis and observed Solis standing near the front of the U-Haul. When officers exited their vehicles to arrest Solis on the outstanding warrant, an investigator "heard a loud thud noise from what sounded like the rear of the U-Haul" but he could not see Solis at that time. Solis was located on the east side and further to the south of the U-Haul and was arrested.

Investigators located a backpack underneath the rear axle of the U-Haul that appeared to be abandoned. After Solis and another individual located at the scene both denied ownership of the backpack, officers searched the backpack, finding seven baggies containing what was later confirmed to be 153 grams of methamphetamine. The backpack also contained 1,550 blue M30 suspected fentanyl pills; $2,330 in U.S. currency; a digital scale; a box of baggies; marijuana; THC wax; mushrooms; and several personal items, including charging cords, binoculars, flashlights, a toothbrush, and a cell phone with "A1" scratched into the back of the phone. "A1" is Solis' known nickname.

While in the back of a police cruiser, he made voluntary statements that some of the items and personal items in the backpack were his, but claimed the items were planted there by someone who had stolen his property. It was the officer's opinion that based on information obtained by law enforcement and the items contained in the backpack, Solis was involved in the distribution of methamphetamine.

Solis was originally charged with possession of methamphetamine with the intent to deliver (140 grams or more), a Class IB felony; possession of fentanyl with the intent to deliver, a Class II felony; and possession of money used or intended to be used to violate § 28-416(1), a Class IV felony.

Pursuant to a plea agreement, Solis pled no contest to a reduced charge of possession of methamphetamine with the intent to deliver (28 to 139 grams), a Class IC felony. As part of the plea agreement, Solis agreed to withdraw his previously filed motion to suppress his statements to law enforcement and to suppress the search of the backpack. The State dismissed the other charged offenses, Solis agreed to sign a forfeiture agreement for the $2,330 in U.S. currency that was recovered, and the State agreed not to add habitual criminal enhancements to the eligible counts. The State also agreed to dismiss a separate case in which Solis was charged with possession of methamphetamine, a Class IV felony. The State then provided a factual basis containing facts as previously set forth.

At the September 2025 combined hearing on counsel's motion to withdraw and sentencing, Solis' counsel was allowed to withdraw because Solis had filed a complaint regarding counsel's performance with the Nebraska Bar Association. After a lengthy discussion, the district court continued the sentencing and stated that it was going to appoint another lawyer to represent Solis.

At the continued sentencing hearing held in October 2025, with Solis represented by new appointed counsel, the court noted that it had received and reviewed the presentence investigation report and additions, including a cover letter from defense counsel and multiple certificates for courses that Solis completed. The court stated:

I do take into consideration the fact that you're 39 years old, and you have lived a life, up to this point, that is riddled with criminal activity. Up to this point, it doesn't look as though you have done the things you needed to do to stay out of prison, whether that be state or federal.

You received a very generous plea offer in this case. You were looking at up to life in prison for the amount of drugs that you had. That, in addition, the State did not include the habitual offender designation on your charge, either in the Information or the Amended Information.

This is a very serious crime. In addition, as the State said, to the large amount of methamphetamine, . . . you had 1,550 fentanyl pills. And if I were to believe what the authorities tell us, just a minute amount of fentanyl can kill a person. . . .

Throughout the [presentence investigation interview], I didn't see any indication that you accepted any responsibility for this crime at all. You blamed everyone else, including your lawyer.

You, not once, even made mention of the amount of times you've already been in prison for the same or similar behavior. Such as . . . back in 2007, where you served two to four years; 2011, where you served over five and a half years, federally. That involved not only drugs but also guns. In 2017, five to seven years involving firearms; and then this.

You've not contributed to society in any meaningful way, and in fact, have placed our community at high risk, taking advantage of those who already are probably in the depths of addiction and are going to have a hard time getting out of it when you continue to supply them and to supply the community with even harder and harsher drugs.

Having regard for the nature and circumstances of your crime; the history, character, and condition of the defendant; the Court finds that imprisonment of the defendant is necessary for the protection of the public, because the risk is substantial, that during any period of probation, the defendant would engage in additional criminal conduct, and because a lesser sentence would depreciate the seriousness of the defendant's crime and promote disrespect for the law.

The district court sentenced Solis to 30 to 50 years' imprisonment, including a 5-year mandatory minimum. The sentence was ordered to run consecutively to any other sentence Solis was currently serving and Solis was granted credit for 437 days previously served. Solis has appealed and is represented by new appellate counsel.

## III. ASSIGNMENTS OF ERROR

Solis assigns as error that (1) the sentence imposed is excessive; and (2) his trial counsel was ineffective in (a) failing to contact witnesses who would have testified that Solis did not have a backpack, specifically, "the friend he met in the intersection, the family selling lemonade, and the friend that knew [Solis'] backpack [had been] stolen," and failing to obtain security footage from Kwik Shop, Radio House, and U-Haul showing he did not have a backpack; and (b) failing to obtain body camera footage in its entirety.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Rejai*, 320 Neb. 599, 29 N.W.3d 225 (2026). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

Solis' first assignment of error is that the sentence imposed is excessive. Specifically, he alleges that "the lengthy [sentence of] incarceration does not serve the legitimate purpose of a sentence," and that the district court (a) failed to consider Solis' mentality, including his "intention and efforts to rehabilitate himself and become a contributing member of society as a mitigating factor and instead only focused on Solis' criminal history as an aggravating factor" and failed to give proper weight and considerations to Solis' entry of a plea of no contest; and (b) "failed to fulfill its judicial duties with decorum and impartiality as required by the Nebraska Revised Code of Judicial Conduct." Brief for appellant at 9 and 18-19.

Solis was convicted of possession of methamphetamine with the intent to deliver (28 to 139 grams), a Class IC felony. See Neb. Rev. Stat. § 28-416(10)(b) (Cum. Supp. 2024). Solis' sentence of 30 to 50 years' imprisonment, including a 5-year mandatory minimum, is within the statutory sentencing range for Class IC felonies, which are punishable by a mandatory minimum of 5 years' imprisonment and a maximum of 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024). Solis also received a substantial benefit from his plea agreement in which a Class IB felony (with a minimum of 20 years' imprisonment and a maximum of life imprisonment) was reduced to a Class IC felony and a Class II felony and a Class IV felony were dismissed.

It is well established that an appellate court will not disturb sentences within the statutory limits unless the district court abused its discretion in establishing the sentences. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021). When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *Id.*

The relevant factors for a sentencing judge to consider when imposing a sentence are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Regarding Solis' claim that the district court failed to give proper weight and consideration to Solis' entry of a plea of no contest, we note that, in deciding the appropriate sentence, a sentencing court can account for the fact that the defendant received a substantial benefit from a plea bargain agreement. See *State v. Morton, supra*. Further, the Nebraska Supreme Court has "long held the view that while a more severe punishment cannot be exacted because a defendant

pleads not guilty and puts the State to the expense of a trial, a defendant nonetheless has no absolute right to a reduced sentence because he saves the State the expense of going to trial." *State v. Rezac*, 318 Neb. 352, 366, 15 N.W.3d 705, 718 (2025).

Solis also argued that the district court failed to consider Solis' mentality, including his "intention and efforts to rehabilitate himself and become a contributing member of society as a mitigating factor and instead only focused on Solis' criminal history as an aggravating factor." However, a sentencing court is not required to articulate on the record that it has considered each sentencing factor nor to make specific findings as to the facts pertaining to the factors or the weight given them. *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). These arguments are merely a request for this court to conduct its own de novo review of those factors. It is not the proper function of an appellate court to conduct a de novo review of the record to determine what sentence it would impose. *State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025).

The presentence report reflected that Solis was 39 years old, was a high school graduate, was separated from his wife, had three dependents, and was required to pay $650 in monthly child support. His criminal history included two convictions for third degree domestic assault and single convictions for shoplifting, possession of marijuana (over 1 oz. to 1 lb.), minor in possession, drinking on a public property or road, possession of a controlled substance with the intent to deliver, unlawful transport of firearms, possession of a firearm by a prohibited person, careless driving, and disturbing the peace. The level of service/case management inventory assessed Solis as a very high risk to reoffend. Solis admitted that, at some points during his life, he used alcohol, marijuana, crack, and methamphetamine on a daily basis. He used cocaine up to two times per month and experimented with heroin, LSD, mushrooms, ecstasy, K2, and inhalants. Solis admitted to having been under the influence of methamphetamine and marijuana at the time of the present offense. The PSR also reflected that Solis suffers from ADHD, ADD, PTSD, OCD, anxiety, and depression.

Based on factors, including that the sentence imposed was within the statutory sentencing range, Solis' very high risk to reoffend, and his criminal history, which included drug and weapons convictions, the district court did not abuse its discretion in sentencing Solis.

We also note that within his argument regarding the excessiveness of his sentence, Solis argues that the court "failed to fulfill its judicial duties with decorum and impartiality as required by the Nebraska Revised Code of Judicial Conduct." Brief for appellant at 18-19. However, his arguments do not relate to sentencing; rather, he raises grievances from the plea hearing and a hearing on counsel's motion to withdraw. The issue regarding the court's decorum and impartiality was not assigned as error. For an appellate court to consider an alleged error, a party must specifically assign and argue it. *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757 (2015). Accordingly, we do not consider this argument.

## 2. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Solis' second assignment of error is that his trial counsel was ineffective in (a) failing to contact witnesses who would have testified that Solis did not have a backpack, specifically, "the friend he met in the intersection, the family selling lemonade, and the friend that knew [Solis'] backpack [had been] stolen" and failing to obtain security footage from Kwik Shop, Radio House,

and U-Haul showing he did not have a backpack; and in (b) failing to obtain body camera footage in its entirety.

In *State v. Swartz*, 318 Neb. 553, 566-67, 17 N.W.3d 174, 184-85 (2025), the Nebraska Supreme Court reiterated the propositions of law relative to a defendant's claims of ineffective assistance of counsel made in a direct appeal:

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Rezac*[, 318 Neb.] 352, 15 N.W.3d 705 (2025).

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*[, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d. 674 (1984)], the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Dat*[, 318 Neb.] 311, 15 N.W.3d 410 (2025). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*.

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id*.

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

(a) Failure to Contact Witnesses and
Obtain Security Footage

Solis first alleges that his trial counsel was ineffective in failing to contact witnesses who would have testified that Solis did not have a backpack, specifically, "the friend he met in the intersection, the family selling lemonade, and the friend that knew [Solis'] backpack [had been] stolen" and  in failing to obtain security footage from Kwik Shop, Radio House, and U-Haul showing he did not have a backpack. Solis claims he has shown that there is a reasonable probability that, but for trial counsel's errors in failing to obtain security footage from several businesses showing that he was not wearing a backpack and failure to obtain the entirety of the body camera footage, he would not have entered a plea and would have taken his case to trial.

When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable

- 6 -

probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019); *State v. Woodruff*, 30 Neb. App. 193, 965 N.W.2d 836 (2021). The likelihood of the defense's success had the defendant insisted on going to trial is relevant to the prejudice analysis; it is relevant to the consideration of whether a rational defendant would have insisted on going to trial. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). The likelihood of the defense's success had the defendant gone to trial should be considered along with other factors, such as the likely penalties the defendant would have faced if convicted at trial, the relative benefit of the plea bargain, and the strength of the State's case. *Id*.

Here, the backpack was not found on Solis' person, no officers reported seeing Solis wearing the backpack or seeing Solis in possession of the backpack prior to its discovery, and Solis denied ownership of the backpack. Nothing in the factual basis suggested that Solis was seen carrying or wearing the backpack prior to his contact with law enforcement. And, in addition to the backpack containing methamphetamine and fentanyl and Solis' personal belongings, the factual basis noted that officers had received information from confidential informants that Solis was selling large quantities of methamphetamine and fentanyl; that Solis was going to be returning from Colorado, where he had gone to obtain a quantity of fentanyl; and that Solis was expected to be in the possession of a U-Haul around a certain identified area in Lancaster County. Officers located the U-Haul truck parked in an alley near a residence known to be associated with Solis and observed Solis standing near the front of the U-Haul. This evidence, when considered in conjunction with the extremely beneficial plea agreement received by Solis, in which a Class IB felony was reduced to a Class IC felony; a Class II felony and a Class IV felony were dismissed and, in another case, a Class IV felony was dismissed; and where the State agreed not to pursue habitual criminal charges, it is quite clear that a rational defendant would not have rejected the plea agreement and insisted on going to trial. This claim fails.

(b) Failure to Obtain Entirety of Body Camera Footage

Next, Solis claims that his trial counsel was ineffective in failing to obtain body camera footage in its entirety.

As the Nebraska Supreme Court emphasized in *State v. Rupp*, 320 Neb. 502, 523, 28 N.W.3d 74, 89 (2025), "the assignment of error must, standing alone, permit an appellate court to determine if the claim can be decided upon the trial record and also permit a district court to later recognize that the claim was raised on direct appeal. This requires a description of the specific conduct alleged to constitute deficient performance."

In *State v. Miller*, Nos. A-20-433, A-20-434, 2021 WL 1186401 (Neb. App. Mar. 30, 2021), this court considered a defendant's claim that his trial counsel was ineffective for failing to secure the arresting officers' body cam footage. This court found this assigned error

> to be a non-specific, broad, and conclusory claim in that, although there was footage of the incident, there was no indication of how that footage would conflict with the factual basis which supported the offense and [the defendant's] original plea thereto. Without pleading what the body cam footage would have shown that would in any way conflict with the factual basis provided by the State to support this charge, we find this claim was pled

- 7 -

without particularity and is not preserved for postconviction proceedings. *Id*. at *6.

Similarly, in the instant case, Solis was aware that there was body camera footage of the incident, but he has maintained that the footage was incomplete. However, his assigned error fails to plead how the body camera footage would conflict with the factual basis provided by the State to support the charged offense and Solis' plea. Without including this in his assignment of error alleging ineffective assistance of counsel for failing to secure the body camera footage in its entirety, he has failed to plead this claim with sufficient particularity, and this claim is not preserved for postconviction proceedings.

## VI. CONCLUSION

Having considered and rejected Solis' assigned errors, we affirm his conviction and sentence.

AFFIRMED.